[Cite as *State v. Cox*, 2026-Ohio-2808.]

## IN THE OHIO COURT OF APPEALS
## FIFTH APPELLATE DISTRICT
## MORROW COUNTY, OHIO

| | |
|---|---|
| STATE OF OHIO | Case No. 2025 CA 0012 |
| Plaintiff - Appellee | Opinion And Judgment Entry |
| -vs- | Appeal from the Court of Common Pleas, Case No. 2024-CR-0085 |
| ADAM SCOTT COX | Judgment:   Affirmed |
| Defendant - Appellant | Date of Judgment Entry: July 22, 2026 |

**BEFORE:** Andrew J. King; Kevin W. Popham; David M. Gormley, Judges

**APPEARANCES:** EDWIN M. BIBLER, for Plaintiff-Appellee; MICHAEL CHRISTOPHER HOAGUE, for Defendant-Appellant.

*King, P.J.*

{¶ 1}   Defendant-Appellant Adam Cox appeals the October 14, 2025 judgment of conviction and sentence of the Morrow County Court of Common Pleas. Plaintiff-Appellee is the State of Ohio. We affirm the trial court.

### Facts and Procedural History

{¶ 2}   On June 9, 2025, Cox was on pretrial release with the Morrow County Court of Common Pleas following a plea of not guilty to receiving stolen property. One condition of his pretrial release was to refrain from consuming alcohol, or drugs, including marijuana. Cox was ordered to submit to random drug urine screens to confirm his compliance with this condition. On June 9, Cox arrived at the Morrow County Adult Probation Office for a screening appointment with a device known as a Whizzinator under his clothing and strapped

to his waist. The Whizzinator is a penis-shaped prosthetic device which houses clean urine and keeps the urine at the appropriate temperature. Cox provided a urine sample which tested negative. While Cox was still in the probation office, officers discovered he had an outstanding warrant for his arrest. During a search incident to his arrest, officers discovered the Whizzinator.

{¶ 3} As a result of these events, on June 26, 2025, the Morrow County Grand Jury returned an indictment charging Cox with one count of tampering with evidence, a felony of the third degree, and one count of possessing criminal tools, a felony of the fifth degree.

{¶ 4} On September 4, 2025, Cox elected to proceed to a trial to the bench. At the conclusion of evidence, the trial court found Cox guilty of both offenses and placed him on a period of community control. Cox later moved the court to amend the sentencing judgment entry asserting that in this matter, possession of criminal tools and tampering with evidence were allied offenses. The trial court agreed and on October 23, 2025, amended Cox's sentencing judgment entry to reflect that Cox was convicted of tampering with evidence only.

{¶ 5} Cox filed an appeal and the matter is now before this court for consideration. He raises two assignments of error as follows:

I

{¶ 6} "THE TRIAL COURT ERRED AS A MATTER OF LAW IN FINDING THAT R.C. 2921.12(A)(1) AND R.C. 2923.24(A) APPLIED TO THE FACTS OF THIS CASE."

II

{¶ 7} "THE TRIAL COURT COMMITTED PREJUDICIAL ERROR BY FAILING TO GRANT APPELLANT'S CRIM.R. 29 MOTION FOR ACQUITTAL AND

FINDING APPELLANT GUILTY WHEN THE STATE'S EVIDENCE WAS LEGALLY INSUFFICIENT TO PROVE EACH ESSENTIAL ELEMENT OF THE CHARGED OFFENSES BEYOND A REASONABLE DOUBT. "

{¶ 8} We elect to address Cox's assignments of error together as they both raise sufficiency and manifest weight arguments.

## Applicable Law

{¶ 9} A review of the sufficiency of the evidence and a review of the manifest weight of the evidence are separate and legally distinct determinations. *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). "While the test for sufficiency requires a determination of whether the State has met its burden of production at trial, a manifest weight challenge questions whether the State has met its burden of persuasion." *Id.* at 390.

{¶ 10} On review for sufficiency, a reviewing court is to examine the evidence at trial to determine whether such evidence, if believed, would support a conviction. *State v. Jenks*, 61 Ohio St.3d 259 (1991). "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Jenks* at paragraph two of the syllabus, following *Jackson v. Virginia*, 443 U.S. 307 (1979). On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). See also, *State v. Thompkins*, 78 Ohio St.3d 380 (1997). The granting

of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *Martin* at 175.

{¶ 11} Crim.R. 29 governs motions for acquittal. Subsection (A) states the following:

> The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses. The court may not reserve ruling on a motion for judgment of acquittal made at the close of the state's case.

{¶ 12} The standard to be employed by a trial court in determining a Crim.R. 29 motion is set out in *State v. Bridgeman*, 55 Ohio St.2d 261 (1978), syllabus: "Pursuant to Crim.R. 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt."

### The Charges

{¶ 13} Cox was charged with one count of tampering with evidence pursuant to R.C. 2921.12(A)(1). That section states:

> No person, knowing that an official proceeding or investigation is in progress, or is about to be or likely to be instituted, shall do any of the following:

(1) Alter, destroy, conceal, or remove any record, document, or thing, with purpose to impair its value or availability as evidence in such proceeding or investigation.

{¶ 14} Cox was further charged with one count of possessing criminal tools pursuant to R.C. 2923.24(A). That section states "No person shall possess or have under the person's control any substance, device, instrument, or article, with purpose to use it criminally."

### Cox's Complaints

{¶ 15} Cox first argues no official proceeding or investigation existed and therefore the trial court erred in finding the State had proven the offense of tampering with evidence. We disagree.

{¶ 16} In *State v. Straley*, 2014-Ohio-2139, the Supreme Court of Ohio examined what evidence the State must produce in order to support a conviction for tampering with evidence. The Court found:

> [T]he evidence tampered with must have some relevance to an ongoing or likely investigation to support a tampering charge. R.C. 2921.12(A)(1) requires the state to prove that an offender, with knowledge of an ongoing (or likely) investigation or proceeding, tampered with (altered, destroyed, concealed, or removed) a record, document, or thing "with purpose to impair its value or availability *as evidence in such proceeding or investigation*." (Emphasis added.) The word "such" is an adjective commonly used to avoid repetition. It means

"having a quality already or just specified." *Webster's Third New International Dictionary* 2283 (1986). In this instance, "such" investigation refers back to the investigation just specified, i.e., the one that the defendant knows is ongoing or is likely to be instituted. Therefore, the evidence must relate to that investigation; otherwise, the word "such" loses all meaning. The state's argument that all evidence recovered in an investigation should be included in the ambit of the tampering statute would require us to change the language from "such" proceeding or investigation to "any" proceeding or investigation.

{¶ 17} *Id.* at ¶16, emphasis added.

{¶ 18} Cox first argues the liquid held within the Whizzinator was of no evidentiary value to the charge of receiving stolen property and would be inadmissible to prove that charge. Brief of Appellant at 7-8. In other words, he argues that the "investigation or proceeding" was his underlying charge of receiving stolen property. We disagree.

{¶ 19} Official proceeding is defined by R.C. 2921.01(D) as "*any* proceeding before a legislative, judicial, administrative, or other governmental agency or official authorized to take evidence under oath, and includes any proceeding before a referee, hearing examiner, commissioner, notary, or other person taking testimony or a deposition in connection with an official proceeding." Emphasis added.

{¶ 20} The "official proceeding" at issue here was not Cox's underlying charge of receiving stolen property. Rather, it was the trial court's ongoing monitoring of Cox for

purposes of verifying his compliance with the terms and conditions of his pretrial release. We therefore find the trial court did not err in finding pretrial release is an official proceeding.

{¶ 21} Cox next faults the trial court's reliance on this court's decision in *State v. Thomas*, 2015-Ohio-2116 (5th Dist.). *Thomas* involved a similar fact pattern involving a required urine screen and the defendant's use of a Whizzinator. In *Thomas*, however, the defendant was on community control and subject to random drug screening as a condition of his community control. According to Cox, this distinction is relevant because drug tests can be used as evidence in community control revocation hearings. While that is true, positive drug tests can also be used to revoke a defendant's pre-trial bond and, as here, can also be used to charge the defendant with new crimes. Indeed, the defendant in *Thomas* was charged with a new crime, specifically, tampering with evidence. We therefore find Cox's argument a distinction without a difference.

{¶ 22} Finally, Cox argues the State failed to prove the liquid contained in the Whizzinator was urine, that it was not his urine, or that he intended to use it for a criminal purpose.

{¶ 23} It is well settled that circumstantial evidence and direct evidence inherently carry the same probative value. *State v. Jenks*, 61 Ohio St.3d 259. The State demonstrated that while on pretrial release, Cox showed up to a random drug test with a device in his pants that is commonly used to cheat drug testing. Transcript of trial at 10-11. Based on those facts, we conclude that the circumstantial evidence in this case would allow the trial court, as the trier of fact, to reasonably infer that Cox failed to comply with the requirement that he refrain from drug use while on pretrial release and intended to use the Whizzinator to tamper with evidence of his required urine drug screen.

{¶ 24}  Cox cites to *State v. Ferdinandsen* 2016-Ohio-7172 (3d Dist.) for what appears to be no more than a potential reasonable explanation argument. *Ferdinandsen* was an appeal from a denial of a motion to withdraw a guilty plea to felonious assault. The defendant in that matter was never charged with tampering with evidence. Rather, he used a Whizzinator for a required drug screen before his presentence investigation. The same day, he submitted a valid negative urine screen and explained he had difficulty urinating in front of others. The Third District Court of Appeals mentioned these facts only in relation to Ferdinandsen's apparent change of heart as to his guilty plea.  Cox made no similar urination anxiety argument. In fact, he presented no evidence at all during his trial. We therefore fail to see any applicability of *Ferdinandsen* to the case at bar or how it may have impacted the trial court's decision.

{¶ 25} Upon thorough examination of the record, we find that the State produced sufficient evidence to support convictions on the charges against Cox, and the trial court did not lose its way in weighing the evidence presented. Accordingly, we overrule the two assignments of error.

{¶ 26} The judgment of the Morrow County Court of Common Pleas is affirmed. Costs to Appellant.

By: King, P. J. and

Popham, J. concur.

Gormley, J. concurs separately.

*Gormley, J., concurring in part and concurring in the judgment*

{¶ 27} I certainly agree with the court's judgment in this case, and I also agree with much of the court's reasoning. I quibble slightly, though, with the court's conclusion in paragraphs 18 and 20 that — in the words of the tampering-with-evidence provision in R.C. 2921.12(A) — the "official proceeding" was not, in this court's view, the ongoing case in which Cox faced a felony charge of receiving stolen property. In my view, that receiving-stolen-property case was in fact the official proceeding in question.

{¶ 28} And part of that receiving-stolen-property case — that "official proceeding" — were all the various stages of any criminal case, including the setting of bail, the defendant's compliance (or failure to comply) with his or her bail terms, and the trial judge's evaluation, at any sentencing hearing, of the defendant's compliance with any bail terms.

{¶ 29} Indeed, Cox's alleged failure to comply with the terms of his bail in his F4 receiving-stolen-property case could very well have made him eligible for a prison term had he been convicted on the charge in that separate case. *See* R.C. 2929.13(B)(1)(b)(iii) (indicating that a defendant charged with a non-violent F4 or F5 offense becomes prison eligible in the case if he or she "violate[s] a term of the conditions of bond as set by the court").

{¶ 30} So whether we view the "official proceeding" in Cox's case as that separate felony receiving-stolen-property case (with all its attendant parts and stages, including the bail terms and Cox's compliance with them) or instead, as the court indicates, the bail-compliance piece of that separate case, the result in this case is the same: the State offered evidence, in the words of the tampering-with-evidence provision in R.C. 2921.12(A)(1), that Cox (1) "kn[ew] that an "official proceeding" was "in progress," (2) "conceal[ed]" his own urine (by using the hidden Whizzinator device that the court describes, and which purportedly contained someone else's urine or perhaps Cox's own urine saved from some earlier date before the date of his bail-related drug test), and (3) had a "purpose to impair" his own urine's "value or availability as evidence" of a pretrial violation of his bail terms in the receiving-stolen-property case.

{¶ 31} Did he in fact use liquid from the device when he provided urine for drug testing on the date of the alleged tampering offense? We cannot be sure, but the finder of fact could reasonably have concluded that he did, and our sufficiency-of-the-evidence review of course compels us now to construe the evidence most strongly in the State's favor.

{¶ 32} I therefore readily conclude that the State did present sufficient evidence on the tampering charge, and I think that the State certainly presented sufficient evidence on the "official proceeding" element of that charge.

{¶ 33} As for Cox's view that his conviction on the charge was inconsistent with the manifest weight of the evidence, I fully embrace the court's conclusion today that Cox's tampering conviction surely cannot be characterized as a manifest injustice. He chose to wear the Whizzinator device on a day when he knew he would be required to provide a urine sample in connection with his bail conditions in his felony receiving-stolen-property case, and

that device contained a liquid of some sort at the time. The State's evidence was, in my view and in the court's view, sufficiently persuasive to the average mind, and this is certainly not a case in which the evidence weighs heavily against a conviction.

{¶ 34} I address one other minor point that the court does not mention today. As the court notes, Cox also challenges the trial court's guilty verdict on the F5 possession-of-criminal-tools charge in this case. The court's opinion does not explain why we need not address that additional challenge, but a perfectly sensible explanation exists for the court's view that we need not reach that argument: We review final judgments, and absent a sentence on the criminal-tools charge, Cox was not convicted on that charge. *See State v. Whitfield*, 2010-Ohio-2, ¶ 12 ("a 'conviction' consists of a guilty verdict *and* the imposition of a sentence or penalty"). Absent a challenge to the trial court's decision merging the tampering and criminal-tools charges, we have no jurisdiction to review the guilty verdict on the criminal-tools charge, given that Cox was never sentenced on it. *See* Ohio Const. art. IV, § 3(B)(2) (giving courts of appeals jurisdiction to review "judgments or final orders"); R.C. 2953.02 (authorizing courts of appeals to review the "judgment or final order" in criminal cases); *State v. Danison*, 2005-Ohio-781, ¶ 6 ("Generally, in a criminal case, the final judgment is the sentence").

{¶ 35} For these reasons, I concur in the court's judgment, and I also join in the court's opinion, aside from paragraph 20 and the final sentence of paragraph 18.